M. A. ASHTON, Appellee, v. J. E. CRANDALL, Appellant.

BOUNDARIES: Survey—Intention. Evidence reviewed, and held
   to show that an agreement for a survey of a boundary line was
   for the sole purpose of *straightening* a line long acquiesced in,
   and not for the purpose of establishing a *new* line.

*Appeal from Mahaska District Court.*—K. E. WILLCOCKSON,
Judge.

FEBRUARY 17, 1920.

SUIT to restrain defendant from erecting his portion of
a division fence on the plaintiff's land, instead of at the
line as surveyed in pursuance of an agreement between the
parties, resulted in a decree as prayed. The defendant ap-
peals.—*Reversed.*

*L. T. Shangle* and *D. C. Waggoner,* for appellant.

*Burrell & Devitt* and *Woodard & McCutchen,* for ap-
pellee.

LADD, J.—The plaintiff owns the SE¼ of the NW¼
of Section 20, and the defendant owns the W½ of the
NW¼ and the NE¼ of the NW¼ of the same section, the
same being in Township 77 north, Range 15 west of the 5th
P. M. The plaintiff's portion of the division fence between
the SW¼ of the NW¼ and the SE¼ of the NW¼ was
the north half, and the portion of the defendant was the
south half. There had been a hedge along the north half,
but only the stumps remained, and a modern fence was
there in its stead. The south half of the fence appears to
have bent or swerved somewhat to the east. In setting ad-
ditional posts, defendant had crowded the line somewhat
to the east, and the plaintiff had spoken to him several
times about straightening the line. On April 2, 1916, plain-

tiff caused to be served on the defendant the following notice:

"You are hereby notified to meet the board of trustees of Union Township on the ground occupied by the partition fence between the SW¼ of the NW¼, Section 20–77–15, owned by you, and the SE¼ of the NW¼, Section 20–77–15, owned by J. H. Ashton, all in Union Township, at one o'clock P. M. of the 7th day of April, 1916. G. P. Eflin, Township Clerk."

The parties met the trustees at the place mentioned, and, after viewing the fences, the latter ordered defendant "to renew and repair his part of said fences in such a manner as to make them lawful fences," and ordered J. H. Ashton "to remove worn and woven wire on the N½ of said fence between SE¼ and SW¼ NW¼, Section 20–77–15, that being his part of said fence." Though reciting in the record that they examined the fence between the NE¼ and SE¼ of the quarter section, no order was made concerning the division fence between these forties. Someone then suggested that it would be a good time to straighten out the fence, and, it being said the trustees could not do this,—that they should have a surveyor,—the township clerk drew up the "articles of agreement entered into this day between Jessie E. Crandall and John H. Ashton, to wit: We hereby agree to each put in a lawful fence as ordered by township trustees, on the line which shall be established by the county surveyor. We further agree to each bear his half of the expense of said survey and cost of the township board as fence viewers, said surveyor to be called by J. E. Crandall." Each party signed this agreement, and the county surveyor undertook to survey the two tracts, and, in so doing, fixed the south end of the division line between the south 40's, 4 feet west of where the old fence stood, and at the north end, 7 feet west of the north end of the old fence. He also fixed the north division line be-

tween the NE¼ and the SE¼ of the NW¼ at 5 feet north of the old line at the west end, and 9½ feet north of the old line at the east end. In September, the board of trustees directed the clerk to cause notice to be served on defendant to erect a lawful fence between the farms of the parties hereto, within 30 days. The defendant commenced the erection of a permanent fence on the line of the former fence; and, thereupon, this action was begun, enjoining him from so doing. It will be observed that the agreement does not describe what was to be surveyed, and, as defendant contends that only the north and south division line between the south 40's was contemplated, and this only for the purpose of straightening the fence, we look to the record to ascertain the intention of the parties. Neither party appears to have expressed any doubt or dissatisfaction with the line between the south 40's, nor with that between the NE¼ and SE¼ of the quarter section. The only change either claims to have talked of was straightening the fence between the SW¼ and the SE¼ of the quarter section. The plaintiff testified that he acquiesced in the demand for a survey made by defendant; and the latter, after saying that plaintiff had complained for several years about defendant's fence being over on his land, and had suggested that it be straightened, testified that, after the fences were viewed, he proposed that it would be a good time to straighten; that one of the trustees or the clerk replied that they had no right to do anything of that kind, and that the proper way was to get a surveyor; that the contract was then drawn and signed.

"Q. That contract was to straighten out the crook in the fence? A. That is what it was for."

On the other hand, plaintiff swore that:

"There has been dissatisfaction, as near as I can remember, from 5 to 7 years; never disputed the line,—the old line,—I never disputed the corners. I never disputed

them. The fence was on the line when I came there, about five or six years ago. Crandall set new posts from the center of his part of the north and south fence south about 10 rods. His hand was setting posts and leaving the old fence stand, putting the fence over on me about three feet. I said, if he was going to put new posts in there, to take out the old fence and put the new ones where the old ones were. That was in the forenoon. In the afternoon, he pulled up those posts he had set, and took the old fence out. I supposed they were going to put the fence in the old line, on the straight line. I came back after dark. It was too dark to see, any more than I could see there was a fence there, and the posts were over on me. I do not know that I ever said anything about that. That commenced on the south end of his new fence, then kind of run, kind of circled off, and came three feet on me, and, at the wind-up, they set the posts over on me for about two feet. I did not make any complaint about it, until I wanted Crandall to put in a new fence, and I called the trustees there then. I wanted the fence straight, where he had set the posts over on me: that is all the contention I had about the fence."

On cross-examination, he estimated that the fence was over on his land, at the farthest, 3 feet, and for a distance of 8 rods, and declared that:

"It leaves a crooked line. I did not dispute the line that was there when I came there. I did not dispute the old line before the survey."

Eflin, the township clerk, swore that:

"Mr. Ashton said he was satisfied with the line as it was, but what he required was that the fence be straightened and repaired; and Mr. Crandall said he was ready to put in his fence, but he wanted to know where the line was, and kept insisting he wanted to know where the line was. Q. What fence were they talking about, when the agreement was signed up,—for a survey on what line? A. My

understanding was that they were talking about the fence in dispute, which included both the fences. This conversation took place in the presence of the board, J. E. Crandall, and Mr. Ashton, on the ground of the line fence. When the agreement was written up, we were at the south end. Ashton and Crandall were talking, as I stated; they were talking about both lines. Ashton stated there was a crook in the fence, and Crandall said he wanted it surveyed. He didn't say he wanted it surveyed so as to take the crook out of the line. The disagreement between these men was in relation to the condition of the fence on both lines."

In the light of this evidence, there can be no doubt as to what was intended. Neither party was concerned about the boundary lines between the 40's, nor the corners. Not only that, but they were satisfied with the location of the lines. The only controversy was as to whether the fence was on the north and south line. Defendant admitted that it was over six inches. The plaintiff thought it over as much as three feet, at one place. This was the controversy to be settled by the survey, and this before the fence was put in. But one fence had been ordered to be renewed or repaired, so as to become a legal fence, and that was the one along this line. That was the one the parties were talking about in connection with the survey. This is the deduction to be drawn from the township clerk's testimony, even when what was said, rather than his conclusion therefrom, is considered. The survey, as made, was not contemplated by the parties. When the line recognized by the adjoining owners for more than 40 years is surveyed, doubtless the fence will be constructed without further controversy. The petition should have been dismissed.—*Reversed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.